[No. 18837. Department One. December 9, 1924.]

THE STATE OF WASHINGTON, *Respondent*, v.
FRANK SERFLING, *Appellant*.[1]

CRIMINAL LAW (224)—TRIAL—RECEPTION OF EVIDENCE — COMPEL-
LING PRODUCTION OF EVIDENCE. Error cannot be assigned on the fail-
ure to produce, on demand at the trial, a written statement in which
the prosecuting witness exonerated the accused and which had been
given to the prosecuting attorney, who stated in open court that he
did not have it and had thrown it way.

SAME (200)—TRIAL—ENDORSEMENT OF WITNESSES — COMPETENCY
OF WITNESS NOT ENDORSED. Error cannot be assigned on the failure
to endorse on the information the name of the prosecuting witness,
who was named in the information, which is sufficient; and failure
to endorse is merely ground for continuance and does not go to
the competency of the witness.

SAME (225)—TRIAL—COMPELLING ATTENDANCE OF WITNESSES. Er-
ror cannot be assigned on the refusal, for the time being, to sub-
poena witnesses for the defense to establish admissions by the prose-
cuting witness, until after his evidence was given and showed it
necessary to do so, where the request was not renewed after he had
testified.

ASSAULT (9-2) — PROSECUTION — DEFENSES — MONEY SETTLEMENT.
In a prosecution for second degree assault, it is no defense that a
money settlement was demanded by the prosecuting witness.

WITNESSES (97)—IMPEACHMENT—GROUNDS OF CREDIBILITY. The
fact that the prosecuting witness, in a second degree assault case,
demanded a money settlement cannot be shown to affect his credi-
bility.

ASSAULT (14)—PROSECUTION—EVIDENCE—SUFFICIENCY. A convic-
tion of second degree assault is sustained where it is admitted that
accused shot the prosecuting witness, and there was evidence that
he had claimed that he shot in self-defense, although later claim-
ing that it was accidental.

CRIMINAL LAW (297) — INSTRUCTIONS — GRADE OR DEGREE OF OF-
FENSE. In a prosecution for second degree assault by shooting, there
is no evidence to warrant the giving of instructions as to third de-
gree assault, in view of Rem. Comp. Stat., §§ 2413, 2414, 2415, defin-
ing the three degrees of assault, the first of which includes assault

[1]Reported in 230 Pac. 847.

with a firearm or deadly weapon, the second, grievous bodily harm, and the third, assault not included in the first two.

WITNESSES (106)—IMPEACHMENT — CROSS-EXAMINATION — CONVICTION OF CRIME. The prior conviction of the accused of another offense may be shown on his cross-examination to affect his credibility, notwithstanding a full pardon, under Rem. Comp. Stat., § 1212, authorizing testimony of a prior conviction for such purpose.

CRIMINAL LAW (356, 358)—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE—CUMULATIVE EVIDENCE. A new trial for newly discovered evidence is properly denied where it was wholly cumulative, or should have been produced in the first instance.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 3, 1923, upon a trial and conviction of first degree assault. Affirmed.

*H. W. Lueders* and *M. J. Gordon,* for appellant.

*J. W. Selden* and *Leo Teats,* for respondent.

BRIDGES, J.—The information charged the appellant with first degree assault in that, on or about a named date, he "unlawfully and feloniously, and with intent to kill a human being, to wit A. Meyers, did assault another, to wit A. Meyers with a firearm, to wit, a 32 Savage automatic pistol. . . ." The testimony showed that Meyers and the appellant, together with another, were drinking quite heavily and were, at least to some extent, intoxicated, and that the appellant shot Meyers in the neck, inflicting a serious wound. He has appealed from a judgment of sentence.

It appears that, before the trial, Meyers made a written statement of the injury and the cause of it, and it is claimed that therein he stated that the shooting was purely accidental, and he did not desire the appellant prosecuted. This statement was given into the possession of the deputy prosecuting attorney. At the trial, the appellant demanded this writing, and now

complains that he did not receive it. There is no merit in this complaint, for the simple reason, that, at the time of the demand, the deputy prosecuting attorney stated in open court that he did not have the statement but had thrown it away.

It is next claimed that the court erred in allowing the witness Meyers to testify, his name not having been endorsed on the information. He was the person upon whom the assault was made and his name was used in the information. This was sufficient. *State v. McGonigle*, 14 Wash. 594, 45 Pac. 20. Besides, we have held many times that witnesses may be used by the state even though their names have not been previously endorsed on the information or indictment, but under such circumstances the person charged may, in the discretion of the court, have a continuance of the trial. Manifestly, there was no surprise in this instance, because there was no request for a continuance.

When Meyers was presented as a witness, the appellant asked the court to issue subpoenas for three persons to be used by him as witnesses. It was claimed that they would testify that Meyers had stated the shooting was an accident. To this request, the court said:

"We will see whether it is necessary to have him or not . . . it may be proper to have them; depends upon the testimony of these witnesses."

The court, for the time being, refused to require the subpoena to be issued. It is manifest that all of these persons who were to be brought into court would be immaterial, if Meyers admitted he made statements to them that the shooting was accidental. At no time after Meyers testified did the appellant request the presence of the persons whom he had asked to be subpoenaed nor did he make any effort to have them subpoenaed. There was no error in what the court did.

On cross-examination, the appellant sought to show by Meyers that he had demanded a money settlement from the appellant, and that there were some tentative arrangements in this respect. Complaint is made that the court refused to allow him to introduce this testimony. We are unable to see how it would have been competent. The appellant might settle the difficulty, as between himself and the person he injured, but he could not settle it as between himself and the state. Nor would such testimony tend to impeach or affect the credibility of the witness Meyers.

It is next claimed that the motion to discharge the jury, made at the close of the state's case, should have been granted because the evidence was insufficient. That appellant actually shot and seriously wounded Meyers is conceded. While the appellant's testimony tended to show that the shooting was accidental, there was ample evidence to the contrary. Indeed, there is testimony that he had stated that he shot in self-defense because Meyers was about to shoot him. Under these circumstances, it is clear to us that the evidence was amply sufficient to carry the case to the jury.

It is next contended that the court should have given a number of requested instructions. Only one of these is argued, and that is the one wherein the appellant asked the court to instruct the jury that he might be found guilty of first, second or third degree assault. The court instructed that he might be found guilty of first or second degree but not of third degree assault. Manifestly there was no evidence to support a verdict of third degree assault. Section 2413, Rem. Comp. Stat. [P. C. § 8758], provides that one is guilty of assault in the first degree who "(1) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death;     .     .     .     " Section 2414, Rem. Comp. Stat. [P. C. § 8759], provides

that one shall be guilty of second degree assault who
"(3) Shall wilfully inflict grievous bodily harm upon
another with or without a weapon; or (4) Shall wil-
fully assault another with a weapon or other instru-
ment or thing likely to produce bodily harm;          .          .
.  ." and § 2415, Rem. Comp. Stat. [P. C. § 8760], is
with reference to third degree assault and provides
that "Every person who shall commit an assault or an
assault and battery not amounting to assault in either
the first or second degrees, shall be guilty of assault
in the third degree,          .          .          .          "  The assault
made by the appellant was with a deadly weapon and
he was guilty of either first or second degree assault
or not guilty at all.  The court's instructions were very
full and comprehensive and fairly presented all the
legal matters to the jury, and, except as above noticed,
gave in substance all of the appellants' requested in-
structions.

During the cross-examination of the appellant, the
prosecuting attorney asked him:

"You were once convicted of the crime of robbery,
were you not?  A.  Yes.  Q.  And served a term in the
state penitentiary?  A.  Yes, and was pardoned."

Appellant seriously contends that the effect of the
pardon was to wipe away all stain of the crime, and to
restore the appellant to all of his rights, and to deprive
the state of the privilege of seeking to affect the credi-
bility of his testimony by proving a prior conviction.
The admissibility of testimony concerning a pardon is
argued by both sides, but the question is not in the case,
because the witness was allowed to testify that he had
been pardoned.  Nor are we able to see how appellant
is in position to contend that the court should have
instructed the jury that the pardon deprived the state
of the right to affect the credibility of the witness in

the manner indicated, because we have been unable to find that he requested any such instruction. But had such a request been made, it would have been proper to refuse it. The authorities generally hold that a pardon does not deprive the state of the right to show a former conviction for the purpose of affecting the credibility of a witness.

"A pardon is not presumed to be granted on the ground of innocence or total reformation, and while it restores competency as a witness it does not change the common law principle that the conviction of an infamous offense is evidence of bad character for truth. . . . it is well settled that, whenever the pardoned convict is presented as a witness, the judgment of his conviction may be put in evidence against him, and that counsel has the right to comment upon his credibility when addressing the jury." 20 R. C. L. 567.

To the same effect see 40 Cyc. 2612; 2 Elliott on Evidence, § 791; *Wormley v. State,* 65 Tex. Cr. 48, 143 S. W. 615; *Gulf, C. & S. F. R. Co. v. Gibson,* 42 Tex. Civ. App. 306, 93 S. W. 469; *Bennett v. State,* 24 Tex. App. 173, 5 S. W. 527; *Dudley v. State,* 24 Tex. App. 163, 5 S. W. 649; *Gallagher v. People,* 211 Ill. 158, 71 N. E. 842. It is not necessary for us to decide whether evidence of a pardon is material, because this testimony was received. We simply decide that proof of a prior conviction may be received for the purpose of affecting the credibility of a witness, notwithstanding a pardon. Section 1212, Rem. Comp. Stat. [P. C. § 7723], authorizes testimony of a prior conviction for the purpose of affecting the credibility of a witness.

It is next claimed that the court erred in not granting a new trial because of newly discovered evidence. There was no error in this respect. The alleged newly discovered evidence was either wholly cumulative, or such that it was the duty of the appellant to have pre-

sented it in the first instance. We do not consider it necessary to extend this opinion by giving a detailed statement of the newly discovered evidence.

A reading of the record convinces us that the appellant had a fair trial. The judgment is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and PARKER, JJ., concur.